IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| SADIE MAE HOLLEY, by and through her Mother and Next Friend, Sara B. Holley, *et al.*,  )<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>CVS CAREMARK CORPORATION, *et al.*, )<br>)<br>Defendants. )  | Case No. 4:16-cv-00017<br><br>By: Elizabeth K. Dillon<br>     United States District Judge |

**MEMORANDUM OPINION**

Sara B. Holley (Mrs. Holley) brings two claims against CVS Caremark Corporation and its subsidiaries (collectively, CVS) stemming from an allegedly mislabeled prescription: the first on behalf of her daughter, Sadie Holley (Sadie), for negligence; and the second on her own behalf for intentional infliction of emotional distress. CVS now moves to dismiss the second claim under Federal Rule of Civil Procedure 12(b)(6), arguing that Mrs. Holley fails to state a claim upon which relief can be granted. For the following reasons, the court will deny CVS's motion to dismiss.

I. BACKGROUND

On December 31, 2013, Sadie, then five years old, underwent a routine tonsillectomy and adenoidectomy.* (Compl. ¶ 10, Dkt. No. 1-1.) To help manage her pain, Sadie's physician provided an "unambiguous, clearly typed, and easily understood" prescription for 2.5 ml Roxicet 5-325 mg/5 ml solution every four to six hours as needed. (*Id.* ¶¶ 11–12.)

---

* The facts recited in this section and relied upon below are derived from Mrs. Holley's complaint. Consistent with the governing standard of review under Federal Rule of Civil Procedure 12(b)(6), the court must accept Mrs. Holley's factual allegations as true and construe them in the light most favorable to Mrs. Holley. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Roxicet contains a mixture of the opioid oxycodone and acetaminophen, and is classified as a Schedule II controlled substance. (*Id.* ¶ 13.) As such, federal and state regulations require pharmacies to carefully inspect and "double-count" the drug, and to provide medication counseling before dispensing. (*Id.* ¶ 14.)

CVS has implemented a series of safeguards to meet these standards, including a computerized "high-dose safety alert warning system," which requires an override before filling a prescription flagged with an alert. (*Id.* ¶¶ 7–8.) Nonetheless, on January 1, 2014, CVS mislabeled Sadie's prescription with directions to take 2.5 to 3 teaspoons instead of milliliters, a measurement five times greater than prescribed. (*Id.* ¶¶ 20, 23.) The pharmacy also failed to provide medication counseling or a measuring device to either Sadie's grandparents, who dropped off the prescription, or her parents, who picked it up later that day. (*Id.* ¶¶ 17, 19.)

Following the instructions provided by CVS, Mrs. Holley administered five 2.5-teaspoon doses of Roxicet to Sadie every four to six hours. (*Id.* ¶ 22.) Approximately one hour after administering the last dose on January 2, Mrs. Holley heard Sadie make an "alarming 'moaning' noise." (*Id.* ¶ 25.) Sadie had become unresponsive, and her eyes had "rolled back." (*Id.*)

By the time Mrs. Holley and her husband drove Sadie to the emergency room, Sadie had turned blue, her oxygen saturation had dropped dangerously low, and her pH level indicated "life-threatening acidosis." (*Id.* ¶ 27.) Additionally, her Glasgow coma score was three, and she had defecated on herself. (*Id.*) Because of the severity of Sadie's condition, emergency-room staff intubated Sadie before airlifting her to Duke University Medical Center. (*Id.*)

During her recovery, Sadie became afraid of the shots necessary to her treatment. (*Id.* ¶ 29.) She would tell Mrs. Holley that she "knew she was dying," and that she "would rather die and go to heaven than take that medicine." (*Id.*) Since her hospitalization, Sadie has made a

reasonable recovery; however, Mrs. Holley remains fearful that Sadie could develop additional symptoms in the future.  (*Id.* ¶ 30.)

Mrs. Holley asserts that witnessing Sadie's rapid decline and emergency treatment, coupled with the knowledge that she herself administered the medication, has led to "ongoing genuine hurt and mental anguish, . . . resulting in difficulty sleeping, ongoing fear for her daughter's well-being, anxiety, and depression."  (*Id.* ¶ 29.)  She also alleges that the emergency-room doctors' shocked reactions and the "cool and accusatory" attitude expressed by CVS corporate management exacerbated these symptoms.  (*Id.* ¶¶ 28, 31.)  As a result, Mrs. Holley claims that CVS intentionally or recklessly acted in an outrageous and intolerable manner, which caused her severe emotional distress with physical inconvenience and other physical ramifications.  (*Id.* ¶¶ 37, 39, 40.)

CVS now moves to dismiss this claim under Rule 12(b)(6), contending that Mrs. Holley has failed to state a claim for intentional infliction of emotional distress.  (Defs.' Mot. 5, Dkt. No. 9.)  Specifically, CVS argues that its actions did not rise to the level of "outrageousness" required for intentional infliction of emotional distress in Virginia, and that Mrs. Holley's emotional distress was not severe.  (*Id.* at 4–5.)

## II.  DISCUSSION

### A.  Standard of Review

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a plaintiff's complaint to determine whether it has properly stated a claim.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  With regard to intentional infliction of emotional distress, the Supreme Court of Virginia has held that "a plaintiff must allege all facts necessary to establish a cause of action."  *Jordan v. Shands*, 500 S.E.2d 215, 219 (Va. 1998).  "But unlike in

Virginia, . . . a complaint in federal court need only provide 'a short and plain statement of the [intentional infliction of emotional distress] claim showing that the pleader is entitled to relief' under federal pleading rules." *Vaile v. Willick*, No. 6:07-cv-00011, 2008 U.S. Dist. LEXIS 5111, at *12 (W.D. Va. Jan. 24, 2008) (quoting Fed. R. Civ. P. 8(a)(2)). Federal pleading rules require facial plausibility, a standard met by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When determining whether the plaintiff has met this standard, "a judge must accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94, and "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards*, 178 F.3d at 244. The court need not, however, "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

**B. Holley's Intentional Infliction of Emotional Distress Claim Against CVS**

In Virginia, claims of intentional infliction of emotional distress require plaintiffs to establish the following elements: "the wrongdoer's conduct is intentional or reckless; the conduct is outrageous and intolerable; the alleged wrongful conduct and emotional distress are causally connected; and, the distress is severe." *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991). In its motion to dismiss, CVS attacks the sufficiency of Mrs. Holley's allegations in establishing outrageousness and the severity of her emotional distress. (Defs.' Mot. 4–5.) The court believes that Mrs. Holley has alleged sufficient facts to create a plausible claim. It will thus deny CVS's motion.

*1. Outrageous Conduct*

Virginia courts adopted the element of outrage in an effort to prevent frivolous suits where "only bad manners and mere hurt feelings are involved." *Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974). Accordingly, this court has previously limited liability for "mere insults, indignities, threats, annoyances, [and] petty oppressions," adding that "plaintiffs must necessarily be expected and required to be hardened to . . . occasional acts that are definitely inconsiderate and unkind." *Simmons v. Norfolk & W. Ry.*, 734 F. Supp. 230, 232 (W.D. Va. 1990) (quoting Restatement (Second) of Torts § 46 cmt. d). A court must make the initial determination of whether a defendant's actions rise to a level of outrageousness. *Womack*, 210 S.E.2d at 148. If reasonable minds may differ, the court may then submit the claim to a jury. *Id.* Thus, this court must determine whether the facts alleged by Mrs. Holley show mere insults or conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Russo*, 400 S.E.2d at 162 (quoting Restatement (Second) of Torts § 46 cmt. d).

The guidance provided by precedent from the Supreme Court of Virginia for distinguishing mere insults from outrageous behavior creates no steadfast rule. *Compare Almy v. Grisham*, 639 S.E.2d 182, 187 (Va. 2007) (upholding denial of defendants' demurrer after they allegedly "devised a scheme to falsely accuse" plaintiff of writing harmful anonymous letters and improperly obtained confidential information from her son's school in order to obtain a handwriting sample), *and Womack*, 210 S.E.2d at 147 (reversing the sustaining of a demurrer when defendant engaged in fraud, deceit, and "wanton, willful and malicious conduct" to obtain a photograph used to accuse plaintiff in the molestation of two young boys, leading to his continued involvement in a sexual molestation case), *with Harris v. Kreutzer*, 624 S.E.2d 24, 34

5

(Va. 2006) (dismissing for lack of outrageous behavior when defendant psychologist "verbally abused [plaintiff], raised his voice to her, caused her to break into tears . . . , stated she was 'putting on a show,' and accused her of being a faker and malingerer" during an examination for traumatic brain injury), *and Russo*, 400 S.E.2d at 161 (finding no outrageous behavior when defendant engaged in 340 "hang-up" calls over three months).

Most likely, the absence of a steadfast rule can be attributed to the fact-specific analysis required for cases of intentional infliction of emotional distress. Both state and federal courts applying Virginia law have agreed that outrageousness "does not objectively describe particular acts but instead represents an evaluation of behavior." *Almy*, 639 S.E.2d at 78 (citing *Russo*, 400 S.E.2d at 162). *See also Tharpe v. Lawidjaja*, 8 F. Supp. 3d 743, 783 (W.D. Va. 2014) (evaluating not only the defendant's actions, but also the context of the conduct). For example, this court has previously decided that acts that would not establish outrageousness when viewed in isolation become outrageous when repeated to create a persistent pattern of offensive conduct. *Faulkner v. Dillon*, 92 F. Supp. 3d 493, 501 (W.D. Va. 2015) (noting that "sexually suggestive comments and inappropriate touching is not sufficiently outrageous," but that years of repeated "sexually abusive language and conduct" suffices). Thus, the test is not whether CVS's actions meet an objective definition of the term, but whether considering the totality of CVS's behavior would lead a reasonable person to exclaim, "Outrageous!" *Nelson v. Green*, No. 3:06-cv-00070, 2014 U.S. Dist. LEXIS 4432, at *49 (W.D. Va. Jan. 14, 2014).

Mrs. Holley contends that dispensing opiates in liquid form to children requires the highest degree of diligence and care (Comp. ¶ 5), but contrary to that duty, CVS "consciously and intentionally" failed to warn her about the high dose of Roxicet by ignoring safety measures, which caused Sadie to become extremely ill, requiring hospitalization and potentially causing

6

lasting effects (*Id.* ¶¶ 32, 34). She further alleges that CVS has implemented "state-of-the-art technology and multi-level check points and safeguards, to assure safety in dispensing prescriptions" (*id.* ¶ 7), and that "there was a complete and utter systemic breakdown" of those safeguards (*id.* ¶ 32(c)). As examples, she claims that CVS dispersed the liquid medication without a measuring device (*id.* ¶ 21), intentionally overrode a computerized high-dose safety-alert system, and failed to double count Sadie's prescription or provide medication counseling as required by law (*id.* ¶ 32(c)). Additionally, Mrs. Holley claims that out-of-state CVS representatives acted "cool and accusatory" when she contacted them about the incident. (*Id.* ¶ 31.)

Each of CVS's alleged missteps alone may not satisfy the element of outrageousness, but the totality of the circumstances shows a pattern of misconduct that plausibly went beyond the bounds of decency and rose to a degree of outrageousness. The complaint thus sufficiently alleges outrageous conduct.

### *2. Severe Emotional Distress*

To establish the element of severe emotional distress, Virginia courts have relied heavily on the Supreme Court of Virginia's opinion in *Russo*. There, the court affirmed the sustaining of a demurrer and, in doing so, alluded to the necessity of "objective physical injury caused by the stress, . . . medical attention, . . . confine[ment] at home or in a hospital, or . . . lost income" in order to state a claim for intentional infliction of emotional distress. *Russo*, 400 S.E.2d at 163. Though these symptoms appear only in dicta, Virginia circuit courts seem to have adopted the *Russo* factors as a rule. *Johnson v. City of Richmond*, No. 3:04-cv-340, 2005 U.S. Dist. LEXIS 387870, at *40–42. Accordingly, CVS urges the court to apply this rule, along with the stricter

7

pleading standard for intentional infliction of emotional distress claims in Virginia, and dismiss Mrs. Holley's claim.

The Fourth Circuit, however, "has explicitly stated that Fed. R. Civ. P. 8 trumps Virginia's heightened pleading standards for intentional infliction of emotional distress in federal cases governed by state law." *Daniczek v. Spencer*, No. 3:15-cv-505, 2016 U.S. Dist. LEXIS 3390, at *39 (E.D. Va. Jan. 11, 2016) (citing *Hatfill v. New York Times Co.*, 416 F.3d 320, 337 (4th Cir. 2005)). The *Hatfill* court denied a 12(b)(6) motion to dismiss, even though the plaintiff only alleged "severe and ongoing loss of reputation and professional standing, loss of employment, past and ongoing financial injury, severe emotional distress and other injury." 416 F.3d at 337. Since *Hatfill*, federal courts applying Virginia law have allowed less specific allegations of emotional distress to survive motions to dismiss. *See, e.g.*, *Daniczek*, 2016 U.S. Dist. LEXIS 3390, at *41 (finding pleading sufficient when alleging "financial harm, harm to her professional reputation, stress, clinical anxiety and depression, mood swings, and insomnia"); *Williams v. Agency, Inc.*, 997 F. Supp. 2d 409, 415 (E.D. Va. 2014) ("Plaintiffs' allegations of 'severe emotional distress' and paranoia are sufficient . . . ."); *Nelson*, 2014 U.S. Dist. LEXIS 4432, at *64–67 (denying defendants' motion to dismiss even though plaintiff did not allege objective symptoms of physical or economic harm). As a result, "[r]elatively simple allegations of emotional distress are sufficient to meet this requirement" as long as the alleged distress is still severe. *Williams*, 997 F. Supp. 2d at 415.

Here, Mrs. Holley alleges not only "ongoing fear and anxiety" (Comp. ¶ 30), but also continued "physical inconvenience and other physical ramifications." (*Id.* ¶ 40.) She further claims that she "was rendered less capable of performing her normal daily tasks." (*Id.*) Because the Fourth Circuit has applied the federal pleading standard of Rule 8, rather than the stricter

8

Virginia standard, this court concludes that Mrs. Holley's alleged symptoms are sufficiently specific and severe to state a plausible intentional infliction of emotional distress claim.

III. CONCLUSION

For the foregoing reasons, the court denies CVS's 12(b)(6) motion to dismiss. A separate order will be entered.

Entered: August 3, 2016.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge